# In the United States Court of Federal Claims

No. 20-1585C
Filed: November 24, 2020[1]

| | |
|---|---|
| **COMPREHENSIVE HEALTH SERVICES, LLC,**<br><br>*Plaintiff*,<br><br>v.<br><br>**THE UNITED STATES,**<br><br>*Defendant*. | **Keywords:** Bid-Protest; Government Accountability Office; Competition in Contracting Act; 31 U.S.C. § 3553; Automatic CICA Stay; CICA Stay Override**;** Temporary Restraining Order; Preliminary Injunction |

*Elizabeth N. Jochum*, *Todd M. Garland,* and *Jessica L. Nejberger,* Smith Patcher McWhorter PLC, Tysons Corner, VA, for Plaintiff.

*John M. McAdams, III,* Trial Attorney, *Douglas K. Mickle,* Assistant Director, *Robert E. Kirschman, Jr.,* Director, and *Jeffrey Bossert Clark,* Acting Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., with whom were *Rafael Lara, Matthew Lane,* and *Bruce James* of Counsel for Federal Emergency Management Agency, for Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

This matter is before the Court on a single, narrow issue: whether the Court should enjoin the United States' decision to override an automatic stay of a contested sole source contract which provides for COVID-19 testing for certain federal employees. The Court declines to do so.

Comprehensive Health Services, LLC ("CHS"), challenges the decision of the United States Department of Homeland Security, Federal Emergency Management Agency ("FEMA"), to override the automatic stay of performance required by the Competition in Contracting Act ("CICA"), arguing that said decision was an arbitrary and capricious abuse of discretion. CHS requests that the Court enjoin FEMA from proceeding with contract performance pending the outcome of its underlying protest with the Government Accountability Office ("GAO").

---

[1] Despite the Protective Order entered in this case, the parties indicated that they wished for this opinion to be filed publicly. Pursuant to that request, this matter is not filed under seal.

In conjunction with its Complaint, CHS filed an Application for Temporary Restraining Order and Preliminary Injunction. (Pl.'s TRO, ECF No. 3). A telephonic hearing was held on November 19, 2020. For the following reasons, Plaintiff's Application for a Temporary Restraining Order and Preliminary Injunction is **DENIED**.

### I.   FACTS

CHS seeks declaratory and injunctive relief to prohibit FEMA from proceeding with the performance of a sole-source contract awarded to Wellness Coaches USA, LLC ("Wellness Coaches") under Solicitation No. 70FB7021Q00000001 (the "Solicitation"). (Compl. at 1). As to the underlying procurement, FEMA sought to acquire services to conduct rapid antigen coronavirus disease 2019 ("COVID-19" or "COVID") testing of federal responders, partners, and other individuals designated to receive tests by the government. (Compl. at 3). It further sought equipment and personnel to conduct on-site COVID-19 testing at any designated FEMA facility or disaster site where FEMA employees are located throughout the United States and its Territories. (*Id.*). The original Request for Quotations (RFQ) was posted September 22, 2020, at 3:13 p.m. and required bids to be submitted the same evening by 9:00 p.m. (*Id.*). Because of the short window, CHS was unable to submit a bid. (Compl. at 4).

Because of the restrictive competition, CHS initially protested before the GAO on September 28, 2020. (*Id.*). The next day, FEMA indicated that it would take corrective action and reopen the solicitation to allow at least three days for bidders to respond. (*Id.*). Based on that indication of corrective action, CHS dismissed its protest. (*Id.* at 5). FEMA then reneged. (Compl. at 5–6). FEMA informed CHS that it intended to procure the services by a single sole source contract or multiple sole source contracts. (Compl. at 6). In its Justification and Approval form ("J&A"), FEMA specified the parameters and locations of the needed testing:

> FEMA must acquire commercial services to provide equipment and personnel to conduct rapid antigen COVID-19 testing of federal responders, their partners, and any other individual designated to receive these tests by the government. These services will be provided for disaster declarations and steady state in areas where FEMA employees are located throughout the United States and its Territories (American Samoa, Guam, Johnston Atoll, Midway Islands, Northern Mariana Islands, Puerto Rico, US Virgin Islands and Wake Island), FEMA intends to process a volume of 150-200 personnel per site per day for screening. FEMA requires the contractor to ramp up and be on site within 48 hours of issuance of a call order for a particular location. The contractor shall provide confirmatory reverse transcriptase-polymerase chain reaction (RT- PCR) testing where positives are identified from the initial screening and/or where false positives are suspected (e.g., antigen or isothermal amplification testing).

(Compl. at 7; s*ee also* https://beta.sam.gov/opp/2028d546b9324f03b0271c9d02ea656c /view?index=opp&notice_type=u&page=1 (last accessed November 19, 2020)).

After FEMA indicated it would no longer take corrective action and filed its J&A, CHS filed a second protest before the GAO on November 3, 2020, challenging the sole source award.

(Compl. at 8). GAO notified FEMA of the protest that same day, thereby triggering the automatic stay of performance under CICA, 31 U.S.C. § 3553(d). (Compl. at 8–9). Although FEMA relied on purported "unusual and compelling urgency" faced by the pandemic to issue the sole source award to Wellness Coaches, CHS asserted that FEMA failed to provide a reasonable basis for foregoing full and open competition. (Compl. Ex. I). CHS based its protest on two primary arguments: (1) FEMA's sole source award is contrary to statute and regulation and is an abuse of discretion as FEMA cannot show use of other than full and open competition is justified; and (2) FEMA's sole source award to Wellness Coaches rests on a lack of advance planning, contrary to statute and regulation. (Compl. at 8–9, citing to Ex. I). After CHS's protest was docketed at the GAO, FEMA notified CHS on November 10, 2020, that FEMA had determined "that urgent and compelling circumstances per FAR 33.104(c)(2)(ii) require the performance to continue" under the sole source contract during the pendency of the GAO protest. (Compl. at 9). According to FEMA's Head of Contracting Activity:

> [U]rgent and compelling circumstances per FAR 33.104(c)(2)(ii) require the performance to continue with respect to the contract awarded to Wellness Coaches, LLC pursuant to FEMA's Justification for Other Than Full and Open Competition dated October 3, 2020, for COVID-19 testing at FEMA sites directly responding to and/or aiding recovering from a Presidentially declared disaster or emergency and that these circumstances will not permit waiting for the Government Accountability Office (GAO) to adjudicate [CHS's November 3, 2020] protest.

(Compl., Ex. L at 1).

CHS now alleges that FEMA's decision to override the CICA stay is arbitrary, capricious, and contrary to law, and urges the Court to enjoin and restrain FEMA from proceeding with performance and declare that FEMA's decision is invalid. (Compl. 1–2).

## II.   DISCUSSION

The Court has jurisdiction over bid protest actions pursuant to 28 U.S.C. § 1491(b). The Court evaluates bid protests under the Administrative Procedure Act's ("APA") standard of review for agency action. *Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005) (citing *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). A motion for judgment on the Administrative Record pursuant to Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC") assesses whether the administrative body, given all the disputed and undisputed facts in the record, acted in a manner that complied with the legal standards governing the decision under review. *Supreme Foodservice GmbH v. United States*, 109 Fed. Cl. 369, 382 (2013) (citing *Fort Carson Supp. Servs. v. United States*, 71 Fed. Cl. 571, 585 (2006); *Greene v. United States*, 65 Fed. Cl. 375, 382 (2005); *Arch Chems., Inc. v. United States*, 64 Fed. Cl. 380, 388 (2005)). Under RCFC 52.1, the parties are limited to the Administrative Record, and the Court makes findings of fact as if it were conducting a trial on a paper record. *See Bannum*, 404 F.3d at 1354. Looking to the record before it, the Court must determine whether a party has met its burden of proof based on the evidence in the record. *Id.* at 1355.

Bid protests initiated at the GAO trigger an automatic stay of the protested contract award under the Competition in Contracting Act until the protest action is resolved. 31 U.S.C. § 3553(c)(1). This automatic stay serves the important purpose of preserving "competition in contracting and ensur[ing] a fair and effective process at the GAO." *Reilly's Wholesale Produce v. United States*, 73 Fed. Cl. 705, 710 (2006) (citing *Advanced Sys. Dev., Inc. v. United States*, 72 Fed. Cl. 25, 31 (2006)). "An agency may override an automatic stay if it notifies the GAO in writing that either 'performance of the contract is in the best interests of the United States,' or 'urgent and compelling circumstances that significantly affect interests of the United States will not permit waiting for the decision of the Comptroller General concerning the protest.'" *Nortel Gov't Sols., Inc. v. United States*, 84 Fed. Cl. 243, 247 (2008) (citing 31 U.S.C. § 3553(d)(3)(C)). When an agency overrides a CICA stay, the Court reviews that decision pursuant to the standards established by the APA, 5 U.S.C. § 706. *Planetspace Inc. v. United States*, 86 Fed. Cl. 566, 567 (2009); *Alion Science & Tech. Corp. v. United States*, 69 Fed. Cl. 14, 23 (2005). A protestor challenging an override decision must establish that the "decision . . . was arbitrary and capricious." *PGBA, LLC v. United States*, 57 Fed. Cl. 655, 660 (2003).

The question before the Court is whether FEMA's J&A substantively met the arbitrary and capricious APA review standard that applies under 28 U.S.C. § 1491(b)(4). *See RAMCOR Servs. Grp., Inc. v. United States*, 185 F.3d 1286, 1290 (Fed. Cir. 1999). Under the legal scheme set out by the Supreme Court, an agency decision would be arbitrary and capricious if:

> [T]he agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009).

This Court has broad authority to order injunctive relief in the context of bid protests. *See* 28 U.S.C. § 1491(b); *Turner Constr. Co. v. United States*, 645 F.3d 1377, 1388 (Fed. Cir. 2011). The function of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits. *Cont'l Servs. Grp., Inc. v. United States*, 722 Fed. Appx. 986, 994 (Fed. Cir. 2018). "[A] preliminary injunction is an extraordinary and drastic remedy" that is not "routinely granted." *Akal Sec., Inc. v. United States*, 87 Fed. Cl. 311, 316 (2009).

When deciding whether to grant a preliminary injunction, the Court weighs four factors: (1) the likelihood of plaintiff's success on the merits; (2) the prospect of irreparable harm to the plaintiff in the absence of injunctive relief; (3) the balance of hardships; and (4) the public interest. *KWV, Inc. v. United States*, 108 Fed. Cl. 448, 455 (2013); *Serco, Inc. v. United States*, 101 Fed. Cl. 717, 720 (2011). No single factor is determinative, and "the weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993). The standard of proof required for a temporary restraining order and preliminary injunction is a preponderance of the evidence, *Contracting Consulting Eng'g LLC v. United States*, 103 Fed. Cl. 706, 709 (2012) (internal citations omitted);

Case 1:20-cv-01585-DAT Document 16 Filed 11/24/20 Page 5 of 8

*Bannum, Inc. v. United States*, 60 Fed. Cl. at 723–24, or, demonstration of a fact as "more likely than not." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 329 (2007) (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 (1983)). The Court will address each of those factors in turn.

  A.  *Likelihood of Success on Merits*

As to this initial factor, CHS claims it is likely to prevail on the merits of this case because FEMA failed to weigh the impact of the override on competition and the integrity of the procurement system. (Pl.'s TRO at 15). CHS's argument for this is heavily dependent on *Reilly's Wholesale.* In that case, another judge on the Court of Federal Claims held that, while override decisions are, by nature, fact-specific, it is possible to distill from the relevant cases a variety of factors that an agency must consider in making an override decision based upon urgent and compelling circumstances. *Reilly's Wholesale*, 73 Fed. Cl. at 711 (citations omitted). Those relevant factors include: (i) whether significant adverse consequences will necessarily occur if the stay is not overridden; (ii) conversely, whether reasonable alternatives to the override exist that would adequately address the circumstances presented; (iii) how the potential cost of proceeding with the override, including the costs associated with the potential that the GAO might sustain the protest, compared to the benefits associated with the approach being considered for addressing the agency's needs; and (iv) the impact of the override on competition and the integrity of the procurement system, as reflected in the CICA. (*Id.*).

When an agency is deciding on whether to override the automatic CICA stay, application of the *Reilly's Wholesale* test is not required. In fact, the Federal Circuit has recently noted "that the *Reilly's* factors do not even bind the Claims Court, let alone comprise an indispensable aspect of an agency rational basis." *Safeguard Base Operations, LLC v. United States*, 792 F. App'x 948–49 (Fed. Cir. 2019) (internal citations omitted). With this in mind, this Court finds that, while they are not binding on this Court, the *Reilly's Wholesale* factors are a useful analytical tool in reviewing the override was arbitrary and capricious and will analyze whether these factors were substantially considered. "In highlighting these particular factors, our court is not substituting its judgment for that of an agency concerning aspects that are important for a particular procurement, but is rather identifying factors that would logically be necessary or irrelevant to override decisions in general." *Supreme Foodservice*, 109 Fed. Cl. at 386.

This Court finds that FEMA's justification for overriding the subject stay and continuing COVID testing adequately considers the factors discussed in *Reilly's Wholesale.* In addressing the first factor–whether significant consequences will necessarily occur if the stay is not overridden–FEMA states that any break in testing: (1) hampers FEMA's ability to detect positive COVID cases among its workforce, (2) hinders FEMA's efforts to mitigate the spread of COVID-19; and (3) jeopardizes FEMA's ability to operate under safe working conditions. (Compl., Ex. L at 6). As to the potential cost associated with the stay, FEMA asserted that it must consider the prevention of human suffering associated with its personnel and their close contacts. (Compl., Ex. L at 7). FEMA's written reasoning does not contain the specific heading pointing to the final factor of *Reilly's Wholesale*—the impact of the override on competition and the integrity of the procurement system. However, FEMA's written reasoning goes on to consider the consequences if the GAO were to sustain CHS's underlying protest, which is an indication that it has not excluded that possibility. (Compl., Ex. L at 8). Considering the entirety

5

of the document justifying its CICA stay override, the Court concludes that FEMA substantially considered the *Reilly's Wholesale* factors.

In further support that it is likely to succeed on the merits of this case, CHS also argues that the urgent circumstances are based on FEMA's own doing. (Pl.'s TRO at 17). It states that FEMA took many steps towards a competitive procurement but, due to a lack of advance planning and execution, did not permit offerors sufficient time to respond to that RFQ, resulting in a GAO protest, an improper sole source award, and the circumstances that led to the Agency's improper determination to override the CICA stay. (Pl.'s TRO at 17–18). This argument is not persuasive on the record before the Court. As the United States correctly points out, CHS cited no authority to support its argument that, even if FEMA's urgency was due to its own creation, that fact would somehow invalidate FEMA's decision to proceed with its COVID-19 testing. (Def.'s Resp. at 22, ECF No. 13).

B.   *Irreparable Harm to CHS*

The second factor this Court must consider in evaluating whether to grant a temporary restraining order is the prospect of irreparable harm to the plaintiff in the absence of injunctive relief. CHS argues that it will suffer competitive injury because the current contract awardee will obtain valuable insight into FEMA's COVID-19 testing requirements that it can use to enhance its standing, and reduce CHS's current advantage, in any future competitive procurement. (Pl.'s TRO at 18). Moreover, CHS asserts that permitting FEMA to override the congressionally-mandated automatic stay would irreparably harm CHS because it would permanently lose the opportunity to compete for and perform this contract, as well as the experience and profit gained from performance. (Pl.'s TRO at 18–19).

The Court is not persuaded. "[A] protestor 'must show that without a preliminary injunction it will suffer irreparable harm before a decision can be rendered on the merits.'" *Akal Security, Inc*, 87 Fed. Cl. at 319. Losing an opportunity to compete may constitute irreparable harm. *See Lab. Corp. of Am. v. United States*, 108 Fed. Cl. 549, 568 (2012). Losing key personnel and going out of business may also constitute irreparable harm. *FMS Inv. Corp.*, 136 Fed. Cl. at 443 In determining whether a bid protestor will suffer irreparable injury by permitting the CICA override to remain, the relevant inquiry is whether the bid protestor has an adequate remedy in the absence of an injunction. *Safeguard Base Operations, LLC v. United States*, 140 Fed. Cl. 670 (2018) (citing 31 U.S.C. § 3553(d)(3)(C)). Here, even if FEMA is permitted to continue acquiring services from Wellness Coaches as a result of its override, CHS will not lose the ability to perform a contract or lose an opportunity to compete for a later contract. CHS is not the incumbent contractor, nor is it currently on-site and ready to provide COVID testing services. Thus, this factor does not weigh in favor of CHS.

C.   *Balance of Hardships*

Third, this Court must consider the balance of hardships to the parties. CHS argues that, should the Court allow this contract to continue, it will forever lose the opportunity to compete for and perform this requirement. (Pl.'s TRO at 20). It states that even if CHS were to compete for a future procurement, Wellness Coaches will have benefitted from performing an illegally awarded contract. (*Id.*). Further, CHS states that while FEMA may incur reprocurement costs

and inconvenience by adhering to the CICA stay, the United States will suffer no hardships and cannot claim harm from complying with the law. (*Id.*).

Again, this Court is unpersuaded. As discussed above, CHS would still retain the ability to compete for procurements, though the Court understands the perceived disadvantage CHS may face. The hardship injunctive relief could impose on the United States would outweigh the harm to CHS because a remedy for CHS to challenge any alleged improper evaluation by FEMA is preserved at the GAO. *See Idea Int'l, Inc. v. United States*, 74 Fed. Cl. 129, 142 (2006) ("Constant changing of teachers, regardless of their abilities, would interrupt the quality of education provided. Inevitably, there would be a delay in any transition and a corresponding delay in the expected educational progress of the children. In balancing the harms, the Court's deference to time-sensitive circumstances is well established.") (citations omitted). Upon issuance of a temporary restraining order, FEMA would no longer be able to acquire commercial services to conduct rapid COVID testing of federal responders, partners, etc., from Wellness Coaches. That means it will likely either have to forego COVID testing services for an extended period of time and suffer the adverse consequences from the virus, or potentially seek to award a new testing contract for those services, which also will deprive FEMA of rapid testing services for a period of time. The disruption of those services and the costs of transitioning away from Wellness Coaches to a new contractor would impose financial hardships on FEMA and would negatively impact the number of people able to be tested. Additionally, while FEMA as a governmental entity may be financially harmed, its responders, employees, and those they encounter are the ones truly at risk. The Court must consider the thousands of FEMA employees benefitting from COVID-19 testing in any weighing of hardships. The Court finds that this factor also does not weigh in favor of CHS.

### D. Public Interest

The final factor to be considered in issuing a temporary restraining order is whether the public interest would be served by granting or denying injunctive relief. CHS asserts that upholding the automatic CICA stay will serve the public interest, as established by Congress. (Pl.'s TRO at 21). In support of its argument, CHS notes that another judge of this Court has recognized, "Congress has determined that the public interest is served by the imposition of an automatic stay to allow the GAO an opportunity to ascertain the merits of a bid protest." (*Id.* citing *URS Federal Servs., Inc. v. United States*, 102 Fed. Cl. 674, 677 (2012)). Moreover, as CHS notes, "[i]t is well established that the public interest is well-served by ensuring that the government procurement process is fair and even-handed." (*Id.* citing *BCPeabody Constr. Servs., Inc. v. United States*, 112 Fed. Cl. 502, 514 (2013) and *PGBA, LLC v. United States*, 60 Fed. Cl. 196, 221 (2004), *aff'd*, 389 F.3d 1219 (Fed. Cir. 2004)).

Regarding this factor, "[t]he public interest in honest, open, and fair competition in the procurement process is compromised whenever an agency abuses its discretion." *PGBA, LLC*, 57 Fed. Cl. at 663; *see also Am. Safety Council, Inc. v. United States*, 122 Fed. Cl. 426, 444 (2015) (holding that "the public interest will be served by an injunction by preserving the integrity of the procurement process"). This Court upholds the notion that an important public interest is served through conducting "honest, open, and fair competition" under the FAR because such competition improves the overall value delivered to the government in the long term. *See CW Gov't Travel, Inc. v. United States*, 110 Fed. Cl. at 495. However, this factor ultimately weighs in

favor of the United States. While case law on this factor is heavily tethered to an even and fair procurement process, in uncertain times of a global pandemic[2], the purpose of the contract cannot be considered separately. By overriding the CICA stay, FEMA will be able to continue to issue rapid testing for responders and other employees which serves a separate and distinct public service—health and wellness.

### III.    CONCLUSION

Having weighed all factors relevant to temporary restraining orders, the Court finds that CHS cannot meet its burden of showing that the extraordinary and drastic remedy—issuance of a temporary restraining order or a preliminary injunction—is necessary.

For the stated reasons, CHS's application for a temporary restraining order and preliminary injunction is **DENIED**. This Opinion is limited to the sole issue of FEMA's decision to override the CICA stay. This Opinion did not consider the evaluation of the methods used to award the underlying contract, or any other issues before the GAO, on the merits.

**IT IS SO ORDERED.**

s/    David A. Tapp
DAVID A. TAPP, Judge

---

[2] "Globally in the past week, rates of new COVID-19 cases and deaths continued to increase, with almost 4 million new cases and 60,000 new deaths recorded. Cumulatively as of 15 November 2020, 53.7 million confirmed cases and 1.3 million deaths have been reported to [World Health Organization]." World Health Organization, *Weekly Epidemiological Update - 17 November 2020*, https://www.who.int/publications/m/item/weekly-epidemiological-update---17-november-2020 (last accessed November 23, 2020).